UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ONBOARD, LLC.,                                          Case No. 08CIV5449

                    Plaintiff,

    -against-

PROPERTY MAPS, INC.,

                    Defendant.

------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

Respectfully submitted,

GOETZ FITZPATRICK LLP
One Penn Plaza, Suite 4401
New York, New York 10119
(212) 695-8100

## TABLE OF CONTENTS

TABLE OF AUTORITIES...........................................................................ii

PRELIMINARY STATEMENT................................................................1

PERSONAL JURISDICTION IN FEDERAL COURT
A BRIEF HISTORY OF THE RELEVANT CASE LAW.............................2

RECENT CASE LAW INVOLVING INTERNET-RELOCATED CONTACT...........11

PERSONAL JURISDICTION IN FEDERAL DISTRICT COURTS IS SUBJECT TO
STATE LONG-ARM STATUTES...............................................................21

WHAT CONSTITUTES TRANSACTING BUSINESS WITHIN THE MEANING OF
CPLR §302.............................................................................................22

ARGUMENT........................................................................................34

    POINT I

        THE SOUTHERN DISTRICT OF NEW YORK LACKS PERSONAL
        JURISDICTION OVER DEFENDANT PROPERTY MAPS INC........34

CONCLUSION.....................................................................................38

EXHIBITS:

AFFIDAVIT OF PAUL M. WEIDENBAUM.......................................EXHIBIT A

AFFIDAVIT OF J. MATTHEW BECK.............................................EXHIBIT B

TABLE OF AUTHORITIES

**Cases**

Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,
98 F.2d 25, 29 (2d Cir. 1996).................................................................... 31

Amco Egypt Oil Co. v. Leonis Navigation Co. J.F.,
1F3d 848, 851 n.2 [9th Cir. 1993] .............................................................. 8

Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102,
112, 107 S. Ct. 1026, 94L, Ed. 2d 92 (1987)...................................... 11, 17

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
305 F.3d 120, 124 (2d Cir. 2002)................................................................ 22

Beacon Enters, Inc. v. Menzies, 715 F.2d 757, 762
(2nd Cir. 1983)........................................................................................ 8, 23

Begley v. Maho Bay Camps, 850 E. Supp. 172, 174
(E.D.N.Y 1994)..................................................................................... 19, 37

Bensmiller v. E.I. Pupont de Nemours & Co., 47 E.3d 79,
84-85 (2d Cir. 1995) ................................................................................... 10

Bensusan Restaurant Corp. v. King, 937 F. Supp. 295,
298-299 (S.D. N.Y. 1996), aff'd 126 F. 3d 25, 27-29 (2d Cir. 1997)......... 12, 23

Blackburn v. Walker Oriental Rug Galleries, Inc.,
999 F. Supp, 636 , 639-640 (E.D. Pa 1998)................................................ 12

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-476,
105 S. Ct. 2174, 85L Ed. 2d 528 (1985)...........................5, 7, 8, 9, 10, 17, 19, 21

Citigroup Inc. v. City Holding Company, 97 F. Supp. 2d 549
(S.D.N.Y. 2000)................................................................................ 13, 14, 36

Coastal Mart, Inc. v. Coastal Oil Co., 681 F. Supp. 1090, 1093
(S.D. N.Y. 1988)............................................................................................ 8

CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365
(2d Cir. 1986)...................................................................................... 23, 37

Deveny v. Rheem Mfg. Co., 319 F.2d 124, 127
(2d. Cir. 1963)............................................................................................... 9

Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.,
18 F.3d 389, 394 (7th Cir. 1994) ................................................................ 10

Fernandez v. McDaniel Controls, Inc., 999 F. Supp. 1365,
1368 (D. Haw. 1998) ................................................................................... 12

Ferrante Equip. Co. v. Lasker-Goldman Corp.,
258 N.E.2d 202 (N.Y. 1970)....................................................................... 32

Fiedler v. First City Nat'l Bank of Houston, 807 F.2d 315,
316-18 (2d Cir. 1986) ................................................................................. 23

Fontanetta v. Am. Bd. Of Internal Med., 421 F.2d 355,
357 (2d Cir. 1970)....................................................................................... 28

Fort Knox Music, Inc. v. Baptiste, 139 F. Supp. 2d 505,
511 (S.D.N.Y. 2001).................................................................................... 23

Franco Steel Corp. v. MN Charm, 19F.3d 624, 627
(11th Cir. 1994)........................................................................................... 20

Frummer v. Hilton Hotels Int'l. Inc., 227 N.E.2d 851,
852 (N.Y. 1967) ................................................................................................ 28

Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d 1455,
1458, 43 USPQ2d 1786, 1788 (Fed. Cir. 1997) ........................................... 27

Graphic Controls Corp. v. Utah Medical Products,
149 F. 3d 1382, 1385-1386 (Fed. Cir. 1998) ....................................... 22, 28, 31

Hanson v. Denckla, 357 U.S. 235, 254, 78 S. Ct.,
1228 L. Ed.ed1283 (1958) ........................................................................ 5, 6, 10

Helicopteros Nacionales de Colombia, S.A. v. Hall,
466 U.S. 408, 414n.9, 1045, CT. 1868, 80 L.Ed.2d 404 (1984).............. 6, 7, 17

Imo Industries, Inc. v. Kiekert A.G., 155 F.3d 254,
259 n.e3 (3d Cir.1998)...................................................................................... 10

International Shoe Co. v. Washington, 326 U.S. 310,
315-316, 665. ct, 154, 90 L.Ed. 683 (1945)........................2, 3, 4, 6, 9, 10

J.E.T. Adver. Assocs., Inc. V. Lawn King, Inc.,
443 N.Y.S.2d 745, 747 (N.Y. App. Div. 1981) ............................................ 33

Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185
(2d Cir. 1998).................................................................................................... 36

KCPL, Inc. v. Nash, No. 98 Civ. 3773 (LMM),
1998 WL 823657, at 4-5 (S.D.N.Y. Nov. 24, 1998).................................... 36

Kreutter v. McFadden Oil Corp., 522 N.E.2d 40,
44 (N.Y. 1988)................................................................................................... 33

Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,
918 F.2d 1039, 1043 (2d Cir. 1990)............................................................... 30

Leab v. Streit, 584 F. Supp. 748, 757 n. 9 (S.D.N.Y. 1984)............................. 18

Madara v. Hall, 916 E.2d 1510, 1519 (11th Cir. 1990) ..................................... 11

Mayes v. Leipziger, 674 F.2d 178, 183 (2d Cir. 1982)...................................... 27

McGee v. International Life Ins. Co., 355 u.s. 220,
223, 785. CT. 199, 2L.Ed.2d 223 (1957)..................................................... 5, 9

McShan v. Omega Louis Brendt et Frere, S.A., 536, F. 2d 516,
517-518 (2d Cir. 1976) ............................................................................... 22, 28

Modern Computer Corp. v. MA, 862 F. Supp, 938, 944
(E.D.N.Y.1994).................................................................................................... 7

Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988)................................... 20

Penzoil Prods. Co. v. Colelli & Assocs., Inc.,
953 F. Supp. 669, 674-675 (W.D. Pa. 1997) ................................................. 18

Perkins v. Benquet Consol. Mining Co., 342 U.S. 437,
447-449, 72 S. Ct. 413, 96 L.Ed 485 (1952).................................................... 7

Pieczenik and I.C. Technologies America, Inc. v. Dyax Corporation,
265 F.3d 1329 (Fed. Cir. 2001)........................................... 23, 25, 34, 35

Rosenberg v. PK Graphics, No. 03 Civ. 6655 (NRB),
2004 WL 1057621, at 2 (S.D.N.Y. May 10, 2004).......................................... 36

Shaffer v. Heitner, 433 U.S. 186, 202, 97 S. Ct. 2569,
53 L.Ed 2d 683 (1977)................................................................................. 6, 20

Smith v. Hobby Lobby Stores, Inc., 96 8F. Supp. 1356

(W.D. Ark. 1997) ........................................................................................ 12

Standard Wine & Liquor Co. V. Bombay Spirits Co.,
228 N.E.2d 367 (N.Y. 1967) ...................................................................... 32

Success Mktg. Elecs. Inc. V. Titan Sec., Inc., 612 N.Y.S.2d 451
(N.Y. App. Div. 1994) ............................................................................... 32

Talbot v. Johnson Newspaper Corp., 522 N.E.2d 1027,
1029 (N.Y. 1988) ....................................................................................... 28

Theunissen v. Matthews, 935 F. 2d 1454, 1460-1461
(6th Cir. 1991) .......................................................................................... 20

Tichenor v. Roman Catholic Church of Archdiocese of New Orleans,
32 F.3D953, 958 (5th Cir. 1994) .............................................................. 20

Ticketmaster-New York, Inc. v. Alioto, 26 F. 3d 201, 210
(1st Cir. 1994) .......................................................................................... 21

Warner Brothers Entertainment Inc, v. Ideal World Direct,
516 F. Supp. 2d 261 (S.D.N.Y. 2007) ........................................... 13, 16, 35

Welinsky v. Resort of the World D.N.V., 839 F.2d 928,
929 (2nd Cir. 1988) ................................................................................... 7

Wilson v. Belin, 20 F.3d 644, 647 (5th Cir.) cert. denied,
_____ U.S. _____, 115 S. Ct. 322 (1994) ............................................... 20

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286,
291-292, 1005. Ct. 559, 62 L.Ed 2d 490 (1980) ................................ 5, 18, 20

Zippo Mfg. Co. V. Zippo Dot Com, Inc., 952 F. Supp 1119,
1123-1126 (W.D. Pa. 1997) ........................................................................ 12

## PRELIMINARY STATEMENT

PropertyMaps, Inc., the defendant herein, is an Internet-based real estate search engine of homes listed for sale in the Multiple Listing Service. Real estate brokerages pay PropertyMaps, Inc. a referral fee for buyer leads for their selected zip codes.

PropertyMaps, Inc. does <u>not</u> have any real estate brokerage customers in the State of New York nor dies it display homes for sale data for New York. PropertyMaps, Inc. does <u>not</u> display data on behalf of any New York realty broker.

PropertyMaps, Inc. does <u>not</u> sell or license any data, and has <u>not</u> derived any revenue from the sale of data anywhere, including New York.

## PERSONAL JURISDICTION IN FEDERAL COURT-
## A BRIEF HISTORY OF THE RELEVANT CASE LAW

In 1945, the United States Supreme Court, in the case of <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 315-316, 665. ct, 154, 90 L.Ed. 683 (1945) held that in order for jurisdiction over a foreign corporation to be found, minimum contacts with the forum state were required such that Notions of fair play and substantial justice are respected.

Reasonably definitive guidelines for determining whether a foreign corporation's forum-related activities were sufficient for the exercise of jurisdiction were not effectively stated until the Supreme Court's decision in <u>International Shoe Co. v. Washington</u>, <u>supra</u>.

The Supreme Court in International Shoe in enunciated a two-part test for jurisdiction, which consisted of minimum contacts and fundamental fairness, thus laying the foundation for modern personal jurisdiction law, in which the rules for determining personal jurisdiction must focus on the defendant's contacts with the forum judicial district.

Chief Justice Harlan Fiske Stone, writing for the Court, enunciated a new standard based on the principles of fairness and the defendant's contacts with the forum, in the following language:

> "Historically, the jurisdiction of Courts to render judgment in personam is grounded in their de facto power over the defendant's person. Hence, his presence within the territorial jurisdiction of a Court was a prerequisite to its rendition of a judgment personally binding him. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the

maintenance of the suit does not offend traditional
notions of fair play and substantial justice.

The International Shoe Co. Court went on to explain that the new formula was

neither "mechanical or quantitative" 326 U.S. at 319. Whether a state may

constitutionally exercise personal jurisdiction over a non-resident defendant depended,

rather, on the "quality and nature" of the forum-related activities stating at p. 319:

> "The [minimum contacts] test is not merely. . . . .
> whether the activity. . . . . is a little more or a little less. .
> . .whether due process is satisfied must depend rather
> upon the quality and nature of the activity in relation to
> the fair and orderly administration of the laws which it
> was the purpose of the due process clause to insure."

The Supreme Court identified four (4) categories to help determine how much

contact is enough to make it fair and reasonable to require a nonresident defendant to

defend an action in a particular forum. These categories led to the recognition of a

distinction between general and specific jurisdiction.

The following categories were established by the Court in the International Shoe

Co. decision, based upon (1) the nature of the defendant's contacts or activities within the

forum state, and (2) whether or not the cause of action arose from those activities:

(1)    When the corporation's activities in the forum state have been "continuous

and systematic" and the cause of action being sued on arose from that activity within the

state, jurisdiction has always been upheld, "even though no consent to be sued or

authorization to an agent to accept service of process has been given." 326 U.S. at 317.

(2)    When the corporation's contact with the state is the casual presence of its

corporate agent or even [the corporation's] conduct of "single or isolated" items of

activity within the state, jurisdiction has never been upheld in a suit on causes of action

not arising from activities within the state. 326 U.S. at 317.

(3)    In some cases, continuous corporate activity within the state was so substantial and of such a nature as to justify suit against the corporation on causes of action entirely distinct from these activities. 326 U.S. at 318.

(4)    In some cases, "single or occasional" acts of the corporation within the state, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to support jurisdiction and justify suit against the corporation on causes of action arising from these acts. 326 U.S. at 318.

A Court must make an "estimate of the inconveniences" resulting to the defendant as a result of a trial away from its home. 326 U.S. at 317. Further, a Court must determine whether it is "reasonable" to require the defendant to defend the particular suit in that forum. To reach this determination, the Court must first determine whether defendant exercised "the privilege of conducting activities within [the] state" and "enjoyed the benefits and protections of the laws of the state."

This required assessment of reasonableness and relative inconvenience implies an interest-balancing analysis.

The International Shoe Co. Court did not, however, resolve whether the trial Court's attention should center on the "contacts" or the "fairplay and substantial justice" part of the test.

Some Courts interpreted the minimum contacts standard to require an assessment of the defendant's physical connections with the state, while others focused on "fair play and substantial justice" considerations, weighing and balancing a variety of competing interests (e.g. the inconvenience to the plaintiff and to the defendant, the regulatory

concerns of the forum state, and the location of witnesses and evidence) to determine whether the exercise of jurisdiction is fair.

In <u>McGee v. International Life Ins. Co.</u>, 355 U.S. 220, 223, 785. CT. 199, 2L.Ed.2d 223 (1957) the Court noted the trend of expanding personal jurisdiction over non residents.

> ". . . But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. . . . These restrictions on the personal are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States.
>
> However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him."

Many years later, the Supreme Court resolved this ambiguity, particularly in the two cases of <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 291-292, 1005. Ct. 559, 62 L.Ed 2d 490 (1980) and <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474-476, 105 S. Ct. 2174, 85L Ed. 2d 528 (1985) which will be discussed in greater detail later on in this memorandum.

In <u>Hanson v. Denckla</u>, 357 U.S. 235, 254, 78 S. Ct., 1228 L. Ed.ed1283 (1958) the Supreme Court added a fundamental factor in the due process analysis to the minimum contacts concept (enunciated in International Shoe) by which the constitutionality of jurisdiction is judged.

Minimum contacts, the <u>Hanson</u> Court stated, cannot exist unless "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."

As a result the contacts connecting the defendant to the forum state must be the forseeable result of the defendant's own purposeful conduct. 357 U.S. at 253.

Like the rule in International Shoe, the rule in Hanson v. Denckla was the subject of differing interpretations by the courts, with one group adhering to the physical contact emphasis of International Shoe (i.e. that Hanson's purposeful availment requirement could be satisfied only if the defendant voluntarily performed some act with the awareness that it could produce a physical impact in the forum state), and the other group emphasizing voluntariness and foreseeability (i.e., that in determining the overall fairness of subjecting the defendant to jurisdiction in the forum state, the defendant's connection with the state must be the foreseeable result of defendant's own action, not the conduct of the plaintiff or a third party).

In Shaffer v. Heitner, 433 U.S. 186, 202, 97 S. Ct. 2569, 53 L.Ed 2d 683 (1977) the Supreme Court resolved this ambiguity by concluding that foreseeability of forum state consequences was the real concern animating the Hanson requirement that the defendant must have purposefully availed itself of the privilege of conducting activities within the forum state, and holding that this requirement is not met when a defendant has no reason to foresee being haled before the forum state's court.

In 1984, in the case of the Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414n.9, 1045, CT. 1868, 80 L.Ed.2d 404 (1984) the Supreme Court distinguished between general and specific jurisdiction.

General jurisdiction refers to the jurisdiction to adjudicate claims that do not arise from the defendant's contacts with the forum state.

6

General jurisdiction ordinarily exists <u>only</u> when the non-resident defendant's forum connections are continuous, systematic, and substantial. See also <u>Perkins v. Benquet Consol. Mining Co.</u>, 342 U.S. 437, 447-449, 72 S. Ct. 413, 96 L.Ed 485 (1952). Specific jurisdiction, by comparison, is jurisdiction to adjudicate claims arising from the defendant's contacts with the forum state. Thus, if a non-resident defendant is not amenable to general jurisdiction in a state, the state may exercise jurisdiction over the defendant <u>only</u> for claims that arise out of the defendant's forum contacts. See <u>Burger King Corp. v. Rudzewicz</u>, <u>supra</u>.

Specific jurisdiction may be available when the non-resident defendant has few contacts, or even a single contact, with the forum state, if the claim arises directly from the contact(s). A typical example is the exercise of jurisdiction over a non-resident defendant who has committed a tort within the forum state.

The threshold of contacts for satisfying the minimum contacts requirement is higher in general jurisdiction cases than it is in specific jurisdiction cases. See <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, <u>supra</u>.

See <u>Modern Computer Corp. v. MA</u>, 862 F. Supp, 938, 944 (E.D.N.Y.1994) in which the 2nd Circuit held that a non-resident defendant is subject to general jurisdiction if defendant is "doing business" in the forum state such that defendant maintains a continuous and systematic course of business in the state. See also <u>Welinsky v. Resort of the World D.N.V.</u>, 839 F.2d 928, 929 (2nd Cir. 1988) in which the Court held that a nonresident defendant is subject to general jurisdiction in New York if it is "engaged in such a continuous and systematic course of doing business [in the state] as to warrant a

finding of. . . . "presence" in this 'jurisdiction', quoting <u>Beacon Enters. Inc. v. Menzies</u>, 715 F.2d 757, 762 (2nd Cir. 1983).

However, even if the nonresident defendant is engaged in "continuous and systematic" activities within the forum state, due process requires that the exercise of general jurisdiction be reasonable, that is, it must meet the interest-balancing part of the minimum contacts test (i.e. not be a denial of fair play and substantial justice). See <u>Amco Egypt Oil Co. v. Leonis Navigation Co. J.F.</u>, 1F3d 848, 851 n.2 [9th Cir. 1993]. In practice, the reasonableness requirement is seldom a barrier to jurisdiction for a defendant engaged in continuous and systematic business within the forum state.

Rather, reasonableness is a more important factor in assessing a non-resident defendant's contacts when the Court is exercising specific jurisdiction.

Specific jurisdiction has been found to exist when a non-resident defendant has purposefully established significant contact with the forum state and the cause of action arises out of or relates to those contacts.

In 1985 in <u>Burger King Corp. v. Rudzweicz</u>, <u>supra</u>, the Supreme Court reaffirmed the general rule that specific jurisdiction requires a showing by the plaintiff that: (1) the nonresident defendant has purposefully established significant (i.e. not random, fortuitous or attenuated) contact with the forum state. [See <u>Coastal Mart, Inc. v. Coastal Oil Co.</u>, 681 F. Supp. 1090, 1093 (S.D. N.Y. 1988) in which a New Hampshire resident who spent less than one day in New York on his employer's behalf without entering into any agreements or soliciting any business, did not have sufficient contacts with New York to subject him to specific jurisdiction in New York.

8

Applying the general rules to be guided by in determining whether the exercise of specific jurisdiction is constitutional requires a thorough understanding of the terms "conflicts", "purposeful availment," "fair or reasonable exercise of jurisdiction," and "arising out of or related contact."

Contacts are defined to include acts physically performed in the forum state which have an effect within the forum.  In Burger King Corp. v. Rudzewicz the Supreme Court, spoke of "purposefully established 'minimum contacts.' " The contacts and the purposefulness should be separately analyzed.

Single transactions have been deemed sufficient to support the exercise of specific jurisdiction over foreign insurance companies.  See McGee v. International Life Ins. Co., 355 U.S. 220, 223 785 . Ct. 199, 2 L.Ed. 223 (1957); see also Deveny v. Rheem Mfg. Co., 319 F.2d 124, 127 (2d. Cir. 1963).  In both of the cases cited above single acts, such as the issuance or delivery of life insurance contracts or solicitation of contracts, by foreign insurers were sufficient to confer personal jurisdiction over insurers.

Since International Shoe, the term 'minimum contacts' has come to have a different meaning than it originally did.  In Burger King v.Rudzewicz, the Supreme Court used the term to describe a threshold requirement that must be met in specific jurisdiction cases before it is necessary to engage in the interest-balancing analysis espoused by the Court in International Shoe.

By minimum contacts, the Supreme Court in Burger King Corp. v. Rudzewicz meant "significant," not "random", fortuitous" or "attenuated" contact.  Under this usage, "minimum contracts" is a preliminary concept that has its own content, it is not the conclusion of a constitutional analysis.  The Burger King Court stated:

> "This purposeful availment requirement ensures that a
> defendant will not be haled into a jurisdiction solely as a
> result of 'random', fortuitous' or 'attenuated' contacts."
>
> The 'purposeful availment' requirement means that the
> nonresident defendant must have purposefully
> established significant contact with the forum state.

See Bensmiller v. E.I. Pupont de Nemours & Co., 47 F.3d 79, 84-85 (2d Cir.

1995) in which the Court held: "It is essential in each case that there be some act by

which the defendant purposefully avails itself of the privilege of conducting activities

within the forum State, thus invoking the benefits and protections of its law," quoting

Hanson v. Denckla; 357 U.S. 235, 254, 78 S. Ct, 1228 L.Ed 2d 1283 (1958).

In the Third Circuit case of Imo Industries. Inc. v. Kiekert A.G., 155 F.3d 254,

259 n.e3 (3d Cir.1998) the Court held that the nonresident defendants' contacts with the

forum were insufficient to demonstrate that it had purposefully directed its activities

toward the forum or had purposefully availed itself of the privilege of conducting its

activities within the forum, when contacts consisted of minimal communications with

plaintiff, without more.

In the Seventh Circuit case of Federated Rural Elec. Ins. Corp. v. Inland Power &

Light Co., 18 F.3d 389, 394 (7th Cir. 1994) the Court hold: "A defendant must have

derived some benefit from the state to justify being forced to litigate in what is likely to

be an inconvenient forum."

The Supreme Court's opinion in Burger King Corp. v. Rudzewicz reflects the

view that the "purposeful availment" requirement set forth in Hanson v. Denckla must be

considered first, before it will become necessary to consider the interest balancing

described in International Shoe. The Burger King Court explained the purposeful

availment requirement as a means of ensuring that the defendant has had "fair warning" that its action would render it amenable to suit in the forum state. The defendant's physical entry into the forum state, however, is not required; the absence of physical contact with the forum state will not defeat specific jurisdiction if the defendant has "purposefully directed" its activities toward forum state residents.

In recent years, difficult issues regarding what constitutes purposeful availment have arisen in a number of cases, especially in product liability cases (e.g. if A sells its product to B, who in turn sells that product in the forum state, has A purposefully availed itself of the forum state?) and in defamation cases (e.g., has a defamation defendant who gives an interview to a publication purposefully availed itself of any forum state where the publication circulates?)

See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112, 107 S. Ct. 1026, 94L, Ed. 2d 92 (1987) in which specific jurisdiction over a Japanese corporate defendant was found to be unreasonable in a cross-claim by a Taiwanese plaintiff after the original California- based plaintiff had settled out of litigation.

See Madara v. Hall, 916 E.2d 1510, 1519 (11th Cir. 1990) in which no purposeful availment was found to exist because the defendant did not control publication of an interview and the act of giving the interview did not constitute "continuous and deliberate exploitation" of the forum state's market.

## RECENT CASE LAW INVOLVING INTERNET-RELATED CONTACT

Recent cases involving defendants activities over the Internet, such as the instant case, raise particularly interesting purposeful availment issues.

See <u>Zippo Mfg. Co. V. Zippo Dot Com, Inc.</u>, 952 F. Supp 1119, 1123-1126 (W.D. Pa. 1997) in which an online computer news service was found to be subject to jurisdiction in the forum state because it contracted with residents of that state over the Internet.

The Second Circuit case of <u>Bensusan Restaurant Corp. v. King</u>, 937 F. Supp. 295, 298-299 (S.D. N.Y. 1996), aff'd 126 F. 3d 25, 27-29 (2d Cir. 1997) in which a Missouri restaurant and night club was found <u>not</u> to be subject to jurisdiction in New York, despite having a website which used the same name as a New York restaurant and night club, because no solicitation for products that would be sent to New York; only solicitation for tickets for shows held in Missouri were available through the defendant's website. The Second Circuit affirmed based largely on an interpretation of New York State's Longarm Statute, CPLR §302.

In a Third Circuit case, <u>Blackburn v. Walker Oriental Rug Galleries, Inc.</u>, 999 F. Supp, 636 , 639-640 (E.D. Pa 1998) the Court found that a nonresident defendant's 'passive' website was not sufficiently purposeful to support jurisdiction, notwithstanding that it had an e-mail link for users.

In an Eighth Circuit case, <u>Smith v. Hobby Lobby Stores, Inc.</u>, 96 8F. Supp. 1356 (W.D. Ark. 1997) the Court held that a Chinese manufacturer's advertisement in a trade publication that appeared on the World Wide Web was insufficient to subject the non resident manufacturer to specific jurisdiction in Arkansas when it did not use the Internet to sell goods or services specifically to Arkansas residents.

See also <u>Fernandez v. McDaniel Controls, Inc.</u>, 999 F. Supp. 1365, 1368 (D. Haw. 1998) in which the Court held that contact with Hawaii through advertising on

defendant's website was not sufficiently purposeful to allow specific jurisdiction for a product liability claim when the product was not sold directly to residents of the forum state, but was sold only through a non-resident middleman.

New York has had an evolving standard for how much "Web presence" is required to create personal jurisdiction under the state's long-arm statute. Typically a simple "brochure-ware" site offering no services - - the equivalent of a billboard in cyberspace - - has not been sufficient to confer jurisdiction over the Web site's owner (assuming no other connection to the state and no other basis for long-arm jurisdiction, such as tortious content). The point at which the site becomes more than that, and begins to cross the line into a commercial enterprise sufficient to support personal jurisdiction, however, is less clear. Two recent cases from the U.S. District Court for the Southern District of New York clarify some of the issues at the margins and reinforce some existing distinctions.  See Citigroup Inc. v. City Holding Company, 97 F. Supp. 2d 549 (S.D.N.Y. 2000), and Warner Brothers Entertainment, Inc. v. Ideal World Direct.

Specific jurisdiction is narrow; a non-domiciliary is subject to specific personal jurisdiction only in cases that arise directly from its contacts with the state. Specific jurisdiction in New York is governed by CPLR §302, and two subparagraphs are particularly relevant in the Internet context.

Section 302(a)(1) grants jurisdiction over any non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." Section 302(a)(3) grants jurisdiction over any non-domiciliary who commits a tort outside of the state (other than defamation ) that causes injury to a person within the state if he "(i) regularly does or solicits business, or engages in any other persistent course of

conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

As §302 is a specific personal jurisdiction statute, there must be a strong , articulable nexus between the claim and the defendant's contacts with the state - - that is, if jurisdiction under §302 is to be based on a few scattered sales into New York, the case must arise out of those sales, not some unrelated conduct.

Though some early personal jurisdiction cases treated the Internet as a single nationwide jurisdictional nexus, New York never followed that route. In the New York courts, the rule has always been that the mere establishment of a passive Web site, even one accessed by New York residents, is not enough to confer jurisdiction over its author.

The seminal case on this issue in New York is Citigroup Inc. v. City Holding Company, 97 F. Supp. 2d 549 (S.D.N.Y. 2000) in which the court wrote:

> "[T]he courts have identified a spectrum of cases involving a defendant's use of the internet. At one end are cases where the defendant makes information available on what is essentially a 'passive' web site. This use of the internet has been analogized to an advertisement in a nationally available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant. At the other end of the spectrum are cases in which the defendant clearly does business over the internet, such as where it knowingly and repeatedly transmits computer files to customers in other states. Finally, occupying the middle ground are cases in which the defendant maintains an interactive website which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction."

This "sliding scale" of personal jurisdiction has now been adopted by most of the circuits, but it is not a separate framework for analyzing Internet-based jurisdiction; it is simply a guide to how courts have approached the issue in the recent past with the caveat that "traditional statutory and constitutional principles remain the touchstone of the inquiry."

As a practical matter, most jurisdictional analysis in the Internet context focuses on specific jurisdiction. A "Web presence" in New York has not been considered enough, standing alone, to establish broad, general personal jurisdiction; such jurisdiction typically requires a substantial presence, such as an office in New York, New York employees or agents, the systematic solicitation of business in New York, or the presence of a bank account or other property in the state.

New York is, in fact, a "solicitation plus" state: even the systematic solicitation of business in New York, without more, will not justify a finding of corporate "presence" sufficient to establish general jurisdiction over a non-resident. Thus, even if a defendant solicits business in New York and transmits those goods to computers in New York through an interactive Web site (the "active" side of the Citigroup sliding scale) that activity may not be enough to establish general personal jurisdiction without additional activities of substance within the state.

Specific jurisdiction, however, is another matter. As noted in Citigroup, if a non-resident supplies goods or services into New York over the Internet, and that transaction becomes the basis for an action, that "single transaction" has typically been seen as enough to satisfy the requirements for specific jurisdiction under §302.

In September 2007, the Southern District found itself in the unique position of clarifying this concept by addressing three different points along the jurisdictional spectrum in a single case.

In Warner Brothers Entertainment Inc. v. Ideal World Direct, 516 F. Supp. 2d 261 (S.D.N.Y. 2007) the court addressed the issue of jurisdiction over three different defendants, each the owner of Web sites allegedly involved in the distribution of copyrighted movies.

The first, Ideal World Direct, operated sites from which users could download "software that can download and display unauthorized copies of copyrighted materials, including films" and, for a membership fee, also provided links to third-party sites that provided the films themselves. Because the plaintiff alleged over 300 specific instances of users in New York downloading the client software, the court held that Ideal World Direct was subject to jurisdiction because it "knowingly and repeatedly transmitted" computer files to customers in New York.

The second defendant, Molinaro, operated two Web sites that also collected membership fees from customers and provided links to third-party content providers. However, in Molinaro's case, plaintiffs were not able to allege any specific connection to customers in New York. The general allegation that Molinaro had "continuing and ongoing business contacts with residents of the state of New York" was insufficient to establish jurisdiction in the absence of any allegation that Molinaro had actually supplied anything to anyone in New York.

Finally, the third defendant, Ashworth, operated a passive site that "did not sell memberships, communicate with customers, or engage in any form of transaction." It

simply acted as a pass-through, redirecting users to another site. The court found this kind of passive Web presence insufficient to support specific jurisdiction.

Warner Brothers thus presents three points along the spectrum: passive sites are not a sufficient basis for jurisdiction, nor are those that collect fees, even if those fees are related to the action, but sites that actually transmit information to an identifiable customer in New York may confer jurisdiction in a case related to that particular transaction.

In specific jurisdiction cases, the purposeful availment requirement may not be met with forum activity unrelated to the cause of action. See Burger King Company v. Rudzewicz, supra, which found that specific jurisdiction exists when "the defendant has purposefully directed his activities at residents of the forum... and the litigation results from alleged injuries that arise out of or relate to those activities," quoting Helicopteros Nationales de Colombia, S.A. v. Hall, supra.

However, contacts with the forum state unrelated to the cause of action may be relevant in determining whether purposeful availment exists in a particular case, to the extent that they indicate that the act in question was purposefully directed at the forum state. See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed 2d 92 (1987) in which the Supreme Court found that additional conduct by defendant, such as designing products for the forum state market, advertising, providing consumer advice, or marketing products through a distributor sales-agent in the forum state, may be relevant in determining whether defendant's action was purposefully directed at the forum state.

17

Mere foreseeability that a defendant's actions may cause harm in the forum state may be insufficient to satisfy the purposeful availment requirement. The defendant's contacts with the forum state are sufficient to support specific jurisdiction only if the defendant has established those contacts purposefully. In World-Wide Volkswagen Corp. v. Woodson, supra, the U.S. Supreme Court rejected mere foreseeability of forum state contact as a substitute for purposefully established contacts, stating: "Foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."

In the Third Circuit case of Penzoil Prods. Co. v. Colelli & Assocs., Inc., 953 F. Supp. 669, 674-675 (W.D. Pa. 1997) the Court found no jurisdiction in a products liability case based on foreseeable harm in the forum because of the "Supreme Court's unequivocal rejection of the idea that jurisdiction can be based solely on the foreseeability of harm in the forum," citing World Wide Volkswagen, supra.

The World-Wide Volkswagen Court stated, 444 U.S. at 297:

> "The foreseeability that is critical to due process
> analysis is not the mere likelihood that a product will
> find its way into the forum state. If forseeability were
> the criteria, a local California tire retailer could be
> forced to defend in Pennsylvania when a blowout occurs
> there…Every seller of chattels would in effect appoint
> the chattel his agent for service of process. His
> amenability to suit would travel with the chattel."

The Court went on to state 444 U.S. at 297:

> "The foreseeability that is critical to due process
> analysis is…that the defendant's conduct and connection
> with the forum state are such that he should reasonably
> anticipate being haled into court there.

In the Second Circuit case of Leab v. Streit, 584 F. Supp. 748, 757 n. 9 (S.D.N.Y. 1984) the Court stated:

> "Although the foreseeability of occurrences within the
> forum state alone does not constitutionally justify haling
> a non-resident into the forum states' courts, the
> foreseeability of a suit in the forum state is a relevant
> factor in determining the fairness and constitutionality of
> exercising power over a defendant."

It is, then, the foreseeability of potential litigation, not just foreseeability of

contact with the forum state, that is of significance in establishing whether the purposeful

availment threshold has been met.

Once a plaintiff has shown that defendants "purposefully established minimum

contacts with the forum state" giving rise to the lawsuit, it remains necessary to consider

whether the balance of competing interests and the nature and quality of the defendant's

purposeful contacts would make it "fair play and substantial justice" to subject the

defendant to jurisdiction there.

The Burger King Court found that in order to determine whether a contract

amounted to "the defendant purposefully establishing minimum contacts within the

forum courts must consider a number of factors, including "prior negotiations and

contemplated future consequences, along with the terms of the contract and the parties'

actual course of dealing."

In the Second Circuit case of Begley v. Maho Bay Camps, 850 E. Supp. 172, 174

(E.D.N.Y 1994) the Court enumerated certain factors to be considered in the case of a

corporate defendant. These include assets, offices, books, employees, listed telephone

number, mailing address, or employment of agents to solicit business in the forum state.

The 'minimum contacts' and fair play and substantial justice test is the "aegis that

protects a nonresident defendant's due process rights as guaranteed by the Fourteenth

Amendment," see Tichenor v. Roman Catholic Church of Archdiocese of New Orleans,

32 F.3D953, 958 (5th Cir. 1994). See also <u>Wilson v. Belin</u>, 20 F.3d 644, 647 (5th Cir.)

cert. denied, _____ U.S. _____, 115 S. Ct. 322 (1994) in which the Court stated:

"If a nonresident defendant has sufficient related or unrelated minimum contacts

with the forum, we must then consider whether the 'fairness' prong of the jurisdictional

inquiry is satisfied."

Fair play and substantial justice is the second prong of a two-prong test for

determining whether exercising personal jurisdiction over a nonresident defendant

complies with due process. See <u>Franco Steel Corp. v. MN Charm</u>, 19F.3d 624, 627 (11th

Cir. 1994); see also <u>Morris v. SSE, Inc.</u>, 843 F.2d 489, 492 (11th Cir. 1988).

The Sixth Circuit applies a third prong to the analytical process in determining

whether personal jurisdiction over a nonresident defendant can be exercised; the third

prong is a consideration of whether the defendant's acts or their consequences have a

substantial enough connection with the forum state as to make the exercise of personal

jurisdiction over defendant reasonable. See <u>Theunissen v. Matthews</u>, 935 F. 2d 1454,

1460-1461 (6th Cir. 1991).

Jurisdiction is not proper unless these threshold requirements are met. See <u>World-</u>

<u>Wide Volkswagen Corp. v. Woodson</u>, supra, in which the Supreme Court states:

> "Even if the defendant would suffer minimal or no
> inconvenience from being forced to litigate before the
> tribunals of another state; even if the forum state has a
> strong interest in applying its law to the controversy;
> even if the forum state is the most convenient for
> litigation, the Due Process Clause…may sometimes act
> to divest the state of its power to render a valid
> judgment." See <u>Shaffer v. Heitner</u>, 433 U.S. 186, 219,
> 97 S. Ct. 2569, 53 L.ED. 2d 683 (1977) which cited
> International Shoe for the rule that the Court simply
> cannot exercise jurisdiction over a nonresident
> defendant that has had no contact with the forum state.

Considerations of the relative inconveniences of the plaintiff and defendant, the forum states interest, and the overall fairness factors becomes necessary only after the minimum contact threshold has been met. See Burger King Corp. v. Rudzewicz, supra.

In the First Circuit case of Ticketmaster-New York, Inc. v. Alioto, 26 F. 3d 201, 210 (1st Cir. 1994) the Court found that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing of contacts related to the controversy and purposeful availment by defendant, the less the defendant needs to show unreasonableness to defeat personal jurisdiction.

## PERSONAL JURISDICTION IN FEDERAL DISTRICT COURTS IS SUBJECT TO STATE LONG-ARM STATUTES

In addition to the constitutional limits on the jurisdiction of federal courts, the exercise of jurisdiction in these courts must also meet any state statutory limits on the exercise of jurisdiction over nonresident defendants. These statutory limits are referred to as "long-arm" statutes.

There are two types of long arm statutes. The first type directs the court to exercise jurisdiction on any basis not inconsistent with the constitution of either that state or of the United States.

The second form of long arm statute is known as an "enumerated act" statute. These, by contrast, direct the court to exercise jurisdiction over any defendant who commits one of several enumerated acts in the forum state. New York's long-arm statute (CPLR §302) is an enumerated act statute. The "transacting business" provisions of enumerated act statutes provide the basis for specific jurisdiction over foreign corporations.

21

Personal jurisdiction in federal courts is subject to state long-arm statutes and constitutional limits on state courts' personal jurisdiction for these reasons:

Although Federal Rule of Civil Procedure 4(e) allows service anywhere in the United States, Rule 4(k)(1)(A) states that such service will be effective to confer personal jurisdiction only if the defendant could be subjected to jurisdiction in the courts of the state in which the district court is located. Federal Courts must look to the state long arm statutes to determine whether the defendant is subject to jurisdiction there, and must apply the relevant state statute even when the cause of action is purely federal. See, e.g., Graphic Controls Corp. v. Utah Medical Products, 149 F. 3d 1382, 1385-1386 (Fed. Cir. 1998).

In the case of McShan v. Omega Louis Brendt et Frere, S.A., 536, F. 2d 516, 517-518 (2d Cir. 1976), the Second Circuit held that in New York, service outside the state is permitted on a foreign corporation "doing business" in New York with fair continuity, as well as under New York's long-arm statute.

## WHAT CONSTITUTES TRANSACTING BUSINESS WITHIN THE MEANING OF CPLR §302

A federal court sitting in diversity exercises personal jurisdiction over a foreign defendant to the same extent as courts of general jurisdiction of the state in which it sits pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002). In such cases, courts must determine if New York law would confer jurisdiction and then decide if the exercise of such jurisdiction comports with the requisites of due process under the Fourteenth Amendment. Id. (citing Bank Brussels, 171 F3d at 784); Bensusan Rest.

Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). If no basis for jurisdiction is found under New York's long-arm statute, the Court does not reach the Due Process analysis.

A nondomicilliary transacts business in New York when he purposefully avails himself of the privilege of conducting activities within New York and thus invokes the benefits and protections of its laws. CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). Courts in New York have consistently refused to sustain personal jurisdiction under C.P.L.R. section 302(a)(1) solely on the basis of a defendant's communication, by telephone or letter, from outside New York into the jurisdiction. See Beacon, 715 F.2d at 766 (citing cases). For instance, in Beacon, a single cease-and-desist letter sent into New York could not sustain personal jurisdiction, id., nor could the multiple cease-and-desist letters support such jurisdiction in Fort Knox Music, Inc. v. Baptiste, 139 F. Supp. 2d 505, 511 (S.D.N.Y. 2001), nor could the three telephone calls and one mailing sent by defendant in Fiedler v. First City Nat'l Bank of Houston, 807 F.2d 315, 316-18 (2d Cir. 1986).

In the case of Pieczenik and I.C. Technologies America, Inc. v. Dyax Corporation, 265 F.3d 1329 (Fed. Cir. 2001) an inventor (Pieczenik) and a patent licensee (I.C. Technologies America) brought an action in the Southern District of New York against a competitor alleging patent infringement and inducement of infringement.

Following discovery on the issue of jurisdiction, the district court granted the defendant's motion to dismiss the action for lack of personal jurisdiction. The plaintiffs appealed, contending that the defendant has sufficient contacts with New York to give the District Court personal jurisdiction under the applicable New York long-arm statute.

The Circuit Court of Appeals for the Second Circuit agreed with the District Court that the plaintiffs failed to show that the defendant's contacts with New York were sufficient to give the District Court jurisdiction over the defendant and affirmed the judgment of the District Court dismissing the action.

Plaintiff George Pieczenik was the inventor named in three patents that are asserted against the defendant Dyax Corporation; U.S. Patent No. 4,359,535 ("the '535 patent"'), which claims autonomously replicating DNA and unique vector populations derived from filamentous bacteriophage; U.S. Patent No. 4,528,266 ("the '266 patent"'), which claims methods for preparing the DNA and vector populations claimed in the '535 patent; and U.S. Patent No. 5866,363 ("the '363 patent"'), which claims a method for identifying specific peptide sequences on proteins that are recognized by antibodies. The three patents are licensed to co-plaintiff I.C. Technologies America, Inc.

Dyax owns four United States patents relating to phage display binding technology. The plaintiffs, contend that the four Dyax patents are dominated by the Pieczenik patents. In their complaint, the plaintiffs alleged that Dyax directly infringed all three Pieczenik patents by "making and/or using, and/or selling, and/or offering to sell" products and methods falling within the scope of the Pieczenik patents. Additionally, the plaintiffs alleged that Dyax induced infringement of the Pieczenik patents by licensing the rights under the subservient Dyax patents to companies located in New York and elsewhere.

Dyax filed a motion to dismiss the complaint for lack of personal jurisdiction, contending that Dyax did not have sufficient contacts with the State of New York to give the District Court personal jurisdiction over Dyax based on New York's long –arm

statute, New York Civil Practice Law and Rule ("CPLR") §§ 301, 302(a)(1) and 302(a)(2). Section 301 of the CPLR permits New York courts to exercise general personal jurisdiction if the defendant's activities within New York are "continuous and systematic." Section 302(a)(1) permits New York courts to exercise specific personal jurisdiction if the defendant "transacts any business" within New York or "contracts anywhere to supply goods or services in the state." Section 302(a)(2) permits New York courts to exercise specific personal jurisdiction over a defendant who "commits a tortuous act within the state."

The district court permitted the parties to conduct discovery with respect to the jurisdictional issue. The discovery proceedings revealed that Dyax has no facilities, property, employees, subsidiaries, operations, bank accounts, or telephone listings in New York. In addition, discovery disclosed that although Dyax has registered in New York as a broker-dealer and has appointed the New York Secretary of State to receive process for any securities actions against it, Dyax is not registered to do business in New York and does not pay corporate taxes in New York.

The plaintiffs argued that the extent and nature of Dyax's contacts with New York were nonetheless sufficient to permit the district court to exercise personal jurisdiction over Dyax with respect to the claims set forth in the complaint. First, the plaintiffs asserted jurisdiction based on two agreements between Dyax and Pall Corporation, a New York company, under which Dyax agreed to provide services to Pall. Pursuant to one of those agreements, Dyax constructed three ligands and sent them to Pall in New York. According to the plaintiffs, the process that Dyax used to make those ligands "employed sequencing vectors encompassed by claims of the ["535 Pieczenik] patent."

Second, the plaintiffs argued that the district court had jurisdiction over Dyax based on an agreement between Dyax and Ortho-Clinical Diagnostics, Inc., another New York company, which granted Ortho-Clinical Diagnostics a license to practice the technology protected by Dyax's phage display patents.

Following a hearing, the district court ruled that none of the New York statutes provided any basis for exercising personal jurisdiction over Dyax. The court first found that it did not have general personal jurisdiction over Dyax, because the evidence did not show that Dyax did business in New York on a continuous and systematic basis and because none of Dyax's other contacts with New York established the "fair measure of permanence and continuity" that is required by the "doing business" test under section 301 of the New York CPLR. With respect to section 302(a)(1), the court concluded that neither Dyax's collaborative activities with Pall Corporation nor its licensing agreement with Ortho-Clinical Diagnostics was sufficient to provide the required substantial nexus between the cause of action and the defendant's activities in New York. Finally, the District Court rejected the plaintiffs' argument that personal jurisdiction over Dyax was established under section 302(a)(2) of the New York CPLR. The Court noted that section 302(a)(2) requires the defendant to commit a tort while physically present in New York State and concluded that the plaintiffs had failed to show that Dyax committed any act related to the lawsuit while present in New York.

The Plaintiffs filed a motion for reconsideration limited to the two arguments they had made under section 302(a)(1) of the New York CPLR. The district court denied the motion for reconsideration, and the plaintiffs took this appeal.

In their brief on appeal, the plaintiffs confined their argument to the portion of the District Court's decision relating to section 302(a)(1) of the CPLR.

The argument made in the plaintiffs' brief on appeal is that the District Court had personal jurisdiction over Dyax under section 302(a)(1) of the New York CPLR. The plaintiffs based that argument on the collaborative arrangement with Pall Corporation and the licensing agreement with Ortho-Clinical Diagnostics. The Second Circuit agreed with the District Court that neither of those transactions satisfies the requirements of section 302(a)(1) of the New York CPLR and that the dismissal of the complaint for lack of personal jurisdiction was correct.

It is generally recognized that in enacting N.Y. C.P.L.R §302, the New York State Legislature did not seek to exercise all of the jurisdictional power constitutionally available under the Supreme Court's due process jurisprudence, Mayes v. Leipziger, 674 F.2d 178, 183 (2d Cir. 1982).

The Second Circuit, in reaching its decision, referred to the analysis which must be performed in determining whether a federal District Court has jurisdiction over a foreign corporate defendant:

Determining whether the District Court has jurisdiction over an out-of-state defendant involves two inquiries: whether the forum state's long-arm statute permits service of process and whether the assertion of personal jurisdiction would violate due process. See Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458, 43 USPQ2d 1786, 1788 (Fed. Cir. 1997); Fed. R. Civ. P. 4(k)(1)(A) (service or process is effective to establish jurisdiction over the person of a defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court

is located"). Because New York's long-arm statute does not reach to the limits of due

process, see Talbot v. Johnson Newspaper Corp., 522 N.E.2d 1027, 1029 (N.Y. 1988),

the inquiry in Pieczenik was confined to whether a New York court would have

jurisdiction over Dyax based on the conduct alleged in the complaint and in the plaintiffs'

response to Dyax's motion to dismiss.

Interpreting New York and Second Circuit cases, the Second Circuit has held that

for a court to assert jurisdiction over a defendant under section 302(a)(1), the plaintiff

must satisfy two requirements:

> (1) the defendant's business activities in New York must
> be activities by which the defendant projects itself into
> New York in a way as to purposefully avail itself of the
> benefits and protections of New York laws and (2) the
> plaintiff's cause of action must arise out of that business
> activity within the state.

Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1386, 47 USPQ2d

1622, 1635 (Fed. Cir. 1998). The second requirement, the so-called nexus test, is

interpreted very narrowly by the New York courts. Id. A single business transaction is

sufficient to satisfy the nexus test under section 302(a)(1), but "the cause of action must

arise from the transaction of business in New York." McShan v. Omega Louis Brandt et

Frere, S.A., 536 F.2d 516, 518 (2d Cir. 1976); Fontanetta v. Am. Bd. Of Internal Med.,

421 F.2d 355, 357 (2d Cir. 1970); see Frummer v. Hilton Hotels Int'l, Inc., 227 N.E.2d

851, 852 (N.Y. 1967). The Second Circuit agreed with the District Court that neither of

the two transactions relied upon by the plaintiffs to establish personal jurisdiction over

Dyax satisfied the nexus test as applied by the New York courts.

The Second Circuit went on to analyze each of the transactions upon which plaintiffs' relied in their argument that personal jurisdiction over Dyax could properly be exercised by the Southern District:

1.      Under the first of the two agreements between Dyax and Pall Corporation ... Pall agreed to pay Dyax "to evaluate the performance of a phage derived ligand for contaminant removal when attached to a membrane or fibrous surface." Dyax performed the work under that agreement in Massachusetts. Under the second agreement between the two ... Pall paid Dyax "to discover and develop a [phage derived] ligand for removal of human pavovirus b19" from "process feed streams of human origin." That work was also performed in Massachusetts. Pursuant to the two agreements, Dyax sent three protein ligands to Pall and was paid for the work. The agreements between Pall and Dyax terminated in 1998.

In the District Court, the plaintiffs argued that the court had jurisdiction over Dyax based on the allegation that Dyax used vectors encompassed by the claims of the Pieczenik '535' patent in making the ligands that Dyax sent to Pall Corporation. The Second Circuit found that even if that allegation were true, however, it is not sufficient to give the District Court personal jurisdiction over Dyax, because the ligands were made in Massachusetts.

The plaintiffs have never contended that the products sent to Pall Corporation infringed the '535' patent; instead, their argument has been that the infringement occurred in the course of the process by which those products were made. For that reason, the cause of action for direct infringement, if any, arose from Dyax's activities in Massachusetts, not from any activities in New York. By the time the ligands were

delivered to Pall Corporation in New York, the infringement, if any, of the '535 patent was already complete. The plaintiffs' showing that Dyax made and delivered the ligands pursuant to an agreement with a New York company is thus not sufficient to satisfy the "nexus test" as applied by the New York courts.

2.      The second transaction on which the plaintiffs rely–Dyax's agreement to license its patents to Ortho-Clinical Diagnostics–was also found to be insufficient to give the District Court personal jurisdiction over Dyax, for a different reason.

The plaintiffs argued that Dyax's patents are dominated by the Pieczenik patents and that by licensing Ortho-Clinical Diagnostics to practice the Dyax patents, Dyax actively induced Ortho-Clinical Diagnostics to infringe the Pieczenik patents, in violation of 35 U.S.C. § 271(b).

According to the plaintiffs, the act of inducement–the licensing of Dyax's patents–took place in New York and therefore constituted a business transaction having a sufficient nexus to the infringement claim to satisfy section 302(a)(1) of the New York CPLR.

The parties conducted discovery related to the jurisdictional issues and advised the district court that no evidentiary hearing was necessary with respect to the issue of personal jurisdiction because the jurisdictional facts were undisputed. Under those circumstances, the plaintiffs bore the burden of proving by a preponderance of the evidence the facts necessary to establish personal jurisdiction over the defendant. See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990).

30

In determining whether a cause of action based on a contractual relationship arises from business activities by which the defendant has projected itself into New York "in such a way as to purposefully avail itself of the benefits and protections of New York laws," Graphic Controls, 149 F.3d at 1386, the New York courts have looked to a number of factors. Those factors include: (1) whether there is an on-going relationship between the defendant and a New York corporation; (2) whether the contract in question was negotiated or executed in New York; (3) the extent of the defendant's visits to New York in connection with the contract; (4) whether the contract contains a choice-of-law provision identifying New York law as governing the disputes arising under the contract; and (5) whether the contract requires the defendant to provide goods and services in New York or send notices and payments into New York. See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.2d 25, 29 (2d Cir. 1996).

Analyzing the plaintiffs' proof in light of those factors, the District Court was found to have correctly concluded that the plaintiffs failed to satisfy their burden of showing that the court had personal jurisdiction over Dyax with respect to the induced infringement claims. The only asserted contact with New York pertaining to the induced infringement claims was Dyax's licensing agreement with Ortho-Clinical Diagnostics, a Delaware corporation with its principal place of business in New York. As the District Court noted, however, the plaintiffs failed to show that the agreement was negotiated or executed in New York.

Moreover, the plaintiffs did not show that Dyax representatives visited New York in connection with the licensing agreement...The agreement did not require Dyax to send any goods into New York or provide any services in New York, and the only payments

called for by the agreement were payments by Ortho-Clinical Diagnostics in New York to Dyax in Massachusetts.

The New York courts have made it clear that the mere existence of a contract with a New York corporation is not sufficient to constitute the transaction of business under section 301(a)(1) of the CPLR. See Success Mktg. Elecs. Inc. V. Titan Sec., Inc., 612 N.Y.S.2d 451 (N.Y. App. Div. 1994). Moreover, the grant of licensing rights to a New York corporation does not constitute the transaction of business within the meaning of the New York long-arm statute. See Standard Wine & Liquor Co. V. Bombay Spirits Co., 228 N.E.2d 367 (N.Y. 1967); Ferrante Equip. Co. v. Lasker-Goldman Corp., 258 N.E.2d 202 (N.Y. 1970). In Standard Wine, the defendant Bombay had granted to a New York corporation "the sole and exclusive right to sell [Bombay] Products within the New York Metropolitan area." 228 N.E.2d 368. The New York Court of Appeals noted that Bombay "maintains no offices, bank account, telephone listing or warehouse for the storage of goods here... Instead, Bombay has given the exclusive rights to market its spirits." Id. Under such an arrangement, the court held that it was "perfectly evident that Bombay does not transact 'any business within the state.'" Id. At 369. In Ferrante, the defendant's only New York contact was an agreement by the defendant to indemnify the plaintiff for a contract to be performed by a third party in New York. The court noted that "[t]he mere receipt by a nonresident of benefit or profit from a contract performed by others in New York is clearly not an act by the recipient in this State sufficient to confer jurisdiction under our long-arm statute." 258 N.E.2d at 205.

Under New York law, activities conducted by an in-state party are not attributable to an out-of-state defendant unless the in-state party is regarded as an agent of the

defendant. See e.g., J.E.T. Adver. Assocs., Inc. V. Lawn King, Inc., 443 N.Y.S.2d 745, 747 (N.Y. App. Div. 1981). To establish agency, the plaintiff "must convince the court that [the agent] engaged in purposeful activities in this State in relation to his transaction for the benefit of and with the knowledge and consent of the [defendant] and that [the defendant] exercised some control over [the agent] in the matter." Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 44 (N.Y. 1988). In this case, the plaintiffs failed to establish an agency relationship between Dyax and Ortho-Clinical Diagnostics with respect to he licensing agreement, because they failed to show that Ortho-Clinical Diagnostics conducted any activities pursuant to the licensing agreement for the benefit of Dyax and, as the District Court found, they failed to show that Dyax exercised any control over Ortho-Clinical Diagnostics under the licensing agreement.

On review of the record, the Second Circuit agreed with the District Court's conclusion that, despite unrestricted discovery on the issue of jurisdiction and an opportunity for an evidentiary hearing on that issue, the plaintiffs failed to offer preponderant evidence of activities by Dyax in New York in connection with the licensing agreement with Ortho-Clinical Diagnostics. All that the plaintiffs were able to show with regard to the licensing agreement was the mere existence of a contract between Dyax and a corporation domiciled in New York. Under the standards applied by New York state federal courts, that showing was insufficient to satisfy the plaintiffs' burden under section 302(a)(1) of the New York long-arm Statute to prove that Dyax transacted business in New York having a nexus to the induced infringement claims. The District Court was therefore held to have been correct to dismiss the plaintiffs' induced infringement claims for want of personal jurisdiction over the defendant.

33

## ARGUMENT
## POINT I

### THE SOUTHERN DISTRICT OF NEW YORK LACKS PERSONAL JURISDICTION OVER DEFENDANT PROPERTYMAPS INC.

Applying the relevant caselaw regarding the exercise of specific personal jurisdiction over a foreign corporation to the facts of the instant case, it is clear that the United States District Court for the Southern District of New York lacks personal jurisdiction over Propertymaps, Inc.

A federal court sitting in diversity exercises personal jurisdiction over a foreign defendant to the same extent as courts of general jurisdiction of the state in which it sits. See Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. The Federal District Court must determine in the first instance whether New York law would confer jurisdiction on the foreign corporation. In the instant case, there is no basis for personal jurisdiction over Propertymaps, Inc. under the New York long-arm statute's provisions since Propertymaps did not under any relevant definition or analysis, based upon the case authority cited above, transact business in New York. The contacts which Propertymaps, Inc. had with New York consist of the limited communications with employees of the plaintiff, and has not purposefully availed itself of the privilege of conducting activities within New York, such as to invoke the benefits and protections of New York's laws. The nature of the contract between Propertymaps, Inc. and Onboard, LLC was insufficient to provide the required substantial nexus between the cause of action and defendant's activities.

The instant case is strongly analogous to the Pieczenik case cited above in which the District Court for the Southern District of New York found that it lacked personal

jurisdiction over the foreign corporation, Dyax, even if the plaintiff's allegation of patent infringement were true since the infringement, if it occurred at all, was based on activities which took place, not in New York, but in Massachusetts.

Similarly, in the instant case the alleged misappropriation of plaintiff's trade secrets, if it occurred at all, and the defendant vigorously denies that it did, took place not in New York, but in Florida, and thus, the cause of action for misappropriation of trade secrets arose in Florida.

Moreover, none of the factors which the <u>Pieczenik</u> Court referred to as relevant in determining whether a cause of action arises from business activities by which a foreign corporate defendant has projected itself into New York in such a way as to "purposefully avail itself of the benefits and protections of New York's laws" is present in the instant case. These factors include: (1) whether there is an ongoing relationship between defendant and a New York corporation; (2) whether the contract in question was negotiated or executed in New York; (3) the extent of defendant's visits to New York in connection with the contract; (4) whether the contract requires defendant to provide goods and services in New York, or to send notices and payments into New York. In the instant case, there is no ongoing relationship between Propertymaps and Onboard; no contract was ever entered into by the parties, and Propertymaps has never provided goods on services to anyone in New York.

Examining the activities in which Propertymaps, Inc. is purported to have engaged, in accordance with the allegations of plaintiff's complaint, in light of the inquiry conducted by the 2007 Second Circuit Court of Appeals decision in <u>Warner Bros. Entertainment, Inc.</u>, it is clear that none of those activities included maintaining an

interactive website that was used to consummate transactions with customers in New York. The plaintiffs herein have not averred any specific connection to customers in New York, and, indeed, Propertymaps had and still has no such specific connection to any customers in this state. See Rosenberg v. PK Graphics, No. 03 Civ. 6655 (NRB), 2004 WL 1057621, at 2 (S.D.N.Y. May 10, 2004) in which the Southern District declined to exercise jurisdiction under §302(a) where the plaintiff failed to allege specifically a single transaction between an interactive website and residents of New York.

Moreover, because plaintiff's jurisdictional averments are generalized, further discovery is not warranted. See Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998) affirming the dismissal of plaintiff's complaint and denying further discovery where plaintiff made only "conclusory non-fact-specific jurisdictional allegations." Similarly, the plaintiffs in the instant case have made only conclusory, non-fact-specific jurisdictional allegations. [See paragraph (16) of the plaintiff's Complaint].

Passive websites of the type which Propertymaps operated have been "analogized to an advertisement in a nationally-available magazine or newspaper," see Citigroup v. City Holding Company, 97 F.Supp. 2d at 549, (S.D.N.Y. 2000), and in the absence of additional connections to New York do not render a foreign defendant subject to personal jurisdiction in the Southern District. See KCPL, Inc. v. Nash, No. 98 Civ. 3773 (LMM), 1998 WL 823657, at 4-5 (S.D.N.Y. Nov. 24, 1998) finding maintenance of a passive website insufficient to establish personal jurisdiction under §302(a).

Propertymaps, Inc. does not have any agents or employees to solicit business in New York, has no customers in New York, does not contract to supply goods or services in New York, had no contractual relationship with any person or business entity in New

York, has no assets, books, office, listed telephone number, mailing address or bank accounts in New York, nor does Propertymaps derive any revenue from goods used or consumed in New York.

The criteria enumerated above were set forth by the Second Circuit in the case of Begley v. Maho Bay Camps, 850 F. Supp. 72, 174 (E.D.N.Y. 1994) as factors to be considered in the case of a foreign corporate defendant in making a determination as to whether the defendant purposefully established minimum contacts within the forum state.

It is clear that Propertymaps, Inc., has not met this, standard of 'purposeful establishment of minimal contacts' within New York.

A non-resident corporation, such as the defendant herein, transacts business in New York within the contemplation of CPLR §302, New York's long-arm statute, when it "purposefully avails [itself] of the privilege of conducting activities within New York and thus invokes the benefits and protections of its laws." See Cut Co. Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).

Courts in New York have consistently refused to sustain personal jurisdiction under CPLR §302(a)(1) solely on the basis of a defendant's communication, by telephone or letter, from outside New York into the jurisdiction.

Based upon the relevant case authority, as it applies to the facts of the instant case, the plaintiff's complaint should be dismissed by the District Court for lack of personal jurisdiction over defendant, Propertymaps, Inc., a Florida corporation, which did not transact business in New York as defined by CPLR §302(a)(1).

At the very least, the District Court should permit the parties to conduct discovery with respect to the jurisdictional issue, inclusive of depositions of parties and non-party witnesses, within a specified period of time to be scheduled by the Court.

Such discovery proceedings would remove any doubt as to whether or not Propertymaps, Inc. had any facilities, offices, property, telephone listings, subsidiaries, operations, bank accounts or employees soliciting business in New York, or derived any revenue from the use or consumption of goods and services in New York.

## CONCLUSION

For all of the foregoing reasons and the case authority cited herein, the motion to dismiss the plaintiff's complaint for lack of personal jurisdiction over defendant should be granted.

In the alternative, the District Court should direct that discovery proceedings on the issue of personal jurisdiction be scheduled immediately.

Dated:  New York, New York
        July 17, 2008

Respectfully submitted,

By: _____
      Paul Weidenbaum, Esq.

GOETZ FITZPATRICK LLP
*Attorneys for Defendant,*
*Propertymaps, Inc.*
One Penn Plaza
New York, NY 10119-0196
(212) 695-8100

On the brief,
Ilyssa London, Law Student

W:\jBejarano\Paul\Onboard\Memo of Law.doc

# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ONBOARD, LLC.,

                Plaintiff,

    -against-

PROPERTY MAPS, INC.,

                Defendant.

-------------------------------------------------------------X

Case No. 08CIV5449

**AFFIDAVIT OF PAUL M.
WEIDENBAUM IN SUPPORT
OF THE DEFENDANT'S
MOTION TO DISMISS FOR
LACK OF PERONAL
JURISDICTION**

STATE OF NEW YORK    )
                       )ss:
COUNTY OF NEW YORK  )

    PAUL M. WEIDEN BAUM, being duly sworn, deposes and states:

    1.     I am an attorney at law and a member of the bar of this Court. I am associated

with the law firm of Goetz Fitzpatrick LLP, attorneys of record for defendant in this action.

    2.     From the complaint in this action it appears that plaintiff is suing to recover

monetary damages in an amount equal to any profit defendant's realized which were attributable

to the alleged unauthorized misappropriation of OnBoard's confidential information.

    3.     Plaintiff alleges that defendant has stolen plaintiff's proprietary data and

published it on defendant's website at www.propertymaps.com.

    4.     Plaintiff alleges in its pleadings that the court of this judicial district has personal

jurisdiction over the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and

New York Civil Practice Laws and Rules ("NYCPLR") §302(a)(1), §302(a)(2), §302(a)(3)(i)

and §302(a)(3)(ii).

    Plaintiff further alleges that venue is proper in the Southern District of New York

pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events and/or property giving

rise to this action occurred in the Southern District of New York.

5.    As is more fully briefed in the accompanying Memorandum of Law, there is no personal jurisdiction over PropertyMaps, Inc. in the Southern District of New York since PropertyMaps, Inc., a nonresident corporation, has <u>not</u> transacted business in the State of New York within the meaning of CPLR §302, New York State's long-arm statute since it has not "purposefully availed itself of the privilege of conducting activities within New York such as to invoke the benefits and protections of its laws". See <u>CutCo. Indus., Inc. v. Naughton</u>, 806 F.2d 361, 365 (2d Cir. 1986).

6.    As is set forth in the accompanying Affidavit of J. Matthew Beck, the president of PropertyMaps, Inc., the defendant has never had any agents or employees solicit business in New York, has no customers in New York, has not contracted to supply goods or services in New York from which defendant has derived revenue, has no assets, books, office, listed telephone number, mailing address, or bank accounts in New York. All of the above were enumerated as criteria by the Second Circuit in the case of <u>Begley v. Maho Bay Camps</u>, 850 F. Supp. 72, 74 (E.D.N.Y. 1994) as factors to be considered in the case of a foreign corporate defendant in determining whether the defendant purposefully established minimum contacts within the forum state.

7.    It is clear from a review of the recent Southern District of New York case of <u>Warner Brothers Entertainment, Inc. v. Ideal World Direct</u>, 516 F. Supp. 2d 261 (S.D.N.Y. 2007) that PropertyMaps, Inc. has <u>not</u> met the criteria for a finding of "purposeful establishment of minimal contacts with New York".

In <u>Warner Brothers</u>, the Southern District concluded in the case of a foreign defendant which operated two (2) websites that also collected membership fees from customers and provided links to third-party content providers, that since the plaintiffs were not able to allege

2

any specific connection to customers in New York, the general allegation that this defendant had "continuing and ongoing business contacts with residents of the State of New York" was insufficient to establish specific jurisdiction in the absence of any allegation that the defendant had actually supplied anything to anyone in New York.

In the same case, another foreign corporate defendant operated a passive site that "did not sell memberships, communicate with customers, or engage in any form of transaction." It simply acted as a pass-through, redirecting users to another site. The Southern District held this type of passive web presence to be insufficient to support specific jurisdiction as well.

See also Pieczenik and I.C. Technologies America, Inc. v. Dyax, 265 F.3d 1329 (Fed. Cir. 2001) which is extensively analyzed in the accompanying Memorandum of Law.

8.    The instant case is strongly analogous to the Pieczenik case in which the Southern District found that it lacked personal jurisdiction over a foreign corporation even if the plaintiff's allegations in that case of patent infringement were true, because the patent infringement by Dyax Corporation, if it occurred at all, arose from activities which had all taken place in Massachusetts, not New York.

In the instant case any misappropriation of plaintiff's trade secrets, if it occurred at all, and defendant PropertyMaps, Inc. vigorously denies that it did, took place in Florida, not New York, and therefore, any cause of action for misappropriation of trade secrets, as well as all remaining causes of action which are rooted in the alleged misappropriation, arose in Florida.

9.    Of equal significance, none of the factors recognized by the Pieczenik Court as relevant in determining whether a cause of action arose from business activities by which a foreign corporation has projected itself into New York in such a way as to "purposefully avail itself of the benefits and protections of New York's laws" is present in the instant case. These

3

factors include: (1) the existence of an ongoing relationship between the foreign defendant and a New York corporation; (2) whether the contract between the parties, if any, was negotiated or executed in New York; (3) the extent of the foreign defendant's visits to New York in connection with said contract; (4) whether the contract between the parties requires defendant to provide goods and services in New York, or to send notices and payments into New York.

Here, there is no ongoing relationship between Onboard and PropertyMaps, Inc.; there is no contract between the parties; and PropertyMaps, Inc. does not provide goods or services to any customers in New York.

Dated: New York, New York
     July 18, 2008

_Paul M. Weidenbaum_
PAUL M. WEIDENBAUM

Sworn to before me this
/8' day of July, 2008

_____
Notary Public

W:\jBejarano\Paul\Onboard\Affidavit of PW.doc

MICHAEL R. FLEISHMAN
Notary Public, State of New York
No. 60-4908903
Qualified in Westchester County
Commission Expires September 21, 2009

**EXHIBIT B**

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ONBOARD, LLC.,                                           Case No. 08CIV5449

                            Plaintiff,                   **AFFIDAVIT OF
                                                         J. MATTHEW BECK**

        -against-

PROPERTY MAPS, INC.,

                            Defendant.
-------------------------------------------------------------X

STATE OF FLORIDA           )
                           )ss:
COUNTY OF SARASOTA         )

        J. MATTHEW BECK, being duly sworn, deposes and states:

        1.      I am the President of Property Maps, Inc., a Florida Corporation. All of the

statements contained herein are based upon my personal knowledge of the relevant facts and

circumstances.

        2.      I make this Affidavit in support of the Defendant's Motion to Dismiss the

Plaintiff's Complaint for lack of personal jurisdiction over Property Maps, Inc. by the United

States District Court for the Southern District of New York.

        3.      Plaintiff's Complaint was served upon defendant via its Registered Agent for

service on June 23, 2008 in Sarasota, Florida.  Thereafter, on July 10, 2008 plaintiff's Amended

Complaint was served upon defendant via its Registered Agent for service in Sarasota, Florida.

        4.      The plaintiff's complaint at paragraph (2) thereof acknowledges that Property

Maps, Inc. is a Florida corporation with its principal place of business located at 325

International Boulevard, Sarasota, Florida 34240.

        5.      PropertyMaps, Inc. is an Internet-based real estate search engine of homes listed

for sale in the Multiple Listing Service. Real estate brokerages pay PropertyMaps a referral fee

for buyer leads for their selected zip codes. PropertyMaps does not have any real estate brokerage customers in the State of New York nor does it display homes for-sale data for New York. PropertyMaps does not sell or license any data and has not generated any revenue form the sale of data. PropertyMaps is offered free of charge to the public.

6.    I am advised by counsel that in order for Property Maps, Inc. to be subject to personal jurisdiction in the Southern District of New York, Property Maps, Inc. must have transacted business in New York by purposefully establishing contacts with New York. Property Maps, Inc. has not done so.

7.    Property Maps, Inc. does not:

(a)    have an office in New York;

(b)    maintain a listed telephone number in New York;

(c)    have any employees or agents for the solicitation of business in New York;

(d)    have any property or facilities in New York;

(e)    have any bank accounts in New York;

(f)    have any customers in New York;

(g)    contract to provide goods and services which are used or consumed in New York..

8.    Property Maps, Inc. did not during the relevant period of time Complained of in the plaintiff's lawsuit, and does not now transact business in New York.

Contrary to the allegations set forth in paragraphs 3, 9 through 13, 15 and 17 of the Complaint, PropertyMaps, Inc. does not and did not:

(1)    provide services to consumers within the state of New York, nor within the judicial district encompassed by the Southern District of New York;

(2)    transact business within the state of New York;

(3)    contract to supply services within the state of New York;

(4)    regularly do or solicit business, or engage in any other persistent course of conduct within the state of New York;

(5)    derive substantial revenue from goods used or consumed in the state of New York;

(6)    misappropriate plaintiff's trade secrets, or engage in unfair competition with plaintiff;

(7)    commit any tortuous acts outside the state of New York that have caused damage within the state of New York which defendant should reasonably have expected to have consequences in the state of New York.

I signed this Affidavit on July 10, 2008, at Sarasota, Florida.

J. Matthew Beck

Sworn to before me this
10th day of July, 2008

Notary Public
Tracy H. Harrah

NOTARY PUBLIC-STATE OF FLORIDA
Tracy A. Harrah
Commission # DD387960
Expires: FEB. 26, 2009
Bonded Thru Atlantic Bonding Co., Inc.

W:\jBejarano\Paul\Onboard\Affidavit of J. Matthew Beck.doc

3

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                      ) ss.:
COUNTY OF NEW YORK  )

      Jessica Bejarano, being duly sworn, deposes and says, deponent is not a party to the action, is over the age of 18 years and resides in Kings County, New York and on the 18th of July, 2008, served the within **MEMORANDUM OF LAW AND ACCOMPANYING AFFIDAVITS,** upon:

      David C. Berg, Esq.
      Attorney for Plaintiff
      425 Madison Avenue
      New York, New York 10017-1110

by depositing a true copy of same in a properly addressed, postpaid envelope in an official depository of the United States Post Office within the State of New York.

                                        JESSICA BEJARANO

Sworn to before me on this
18th day of July, 2008


                    
Notary Public

                          MAXINE RAND
                 Notary Public, State of New York
                      No. 01RA4844958
                  Qualified in Nassau County
             Commission Expires Nov. 30, 2009

W:\jBejarano\Paul\Onboard\AOS.wpd